UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:21-cv-304-MOC-WCM

| | |
|---|---|
| **BARRETT VALUES CENTRE, LLC,** ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| **RICHARD BARRETT,** ) | |
| ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court on Plaintiff's Motion to Dismiss Defendant's Counterclaim. (Doc. No. 12). Upon careful consideration of the arguments submitted by the parties, Plaintiff's Motion is **DENIED**.

I.     **BACKGROUND**

Plaintiff Barrett Values Centre, LLC is a limited liability company organized under North Carolina law with its principal place of business in Waynesville, North Carolina. (Doc. No. 1 at 1). Defendant Richard Barrett is an author and consultant who specializes in "the fields of leadership and personal and organizational values" and is best known for developing "The Seven Levels of Consciousness" model, which "tracks the development of both individuals and organizations" from the perspective of their values. (Id. at 3). Defendant developed this model in the 1990s and chartered a company, Richard Barrett & Associates, LLC ("RBA"), along with his then-wife Nancy Barrett in 1997. (Id.). Defendant and Ms. Barrett executed an operating agreement to govern the company in 2003. (Id.; see Doc. No. 1-1). Plaintiff claims that Defendant "agreed to contribute all of the assets of his sole proprietorship to RBA as his initial capital

1

contribution." (Id. at 4). Plaintiff employed Defendant from 1998 to 2019 continue his consulting work. (Id.). RBA subsequently changed its name to Barrett Values Center, LLC. Defendant Barrett Values Center is owned by: (1) Plaintiff, who owns 41.11%; (2) his former wife Nancy Barrett who also owns 41.11%; and (3) Nancy Barrett's son Christopher Gomez, who owns the remaining 17.78% and currently serves as manager. (Doc. No. 9 at 12).

Plaintiff alleges that Defendant has now provided consulting services primarily for a United Kingdom company called "Barrett Academy for the Advancement of Human Values Ltd," for which he is the sole owner. (Id. at 5). Plaintiff further alleges that Defendant is working with a United Kingdom company called Axia Origin Ltd ("Axia") to develop "a tool to measure the wellbeing of national populations" called "the Global Wellbeing Indicators" ("GWI"). (Id.). Plaintiff alleges that Defendant and his business partner are now popularizing these indicators on a website. (Id. at 6).

Plaintiff brought this suit on October 18, 2021, seeking a declaratory judgment that Plaintiff owns certain intellectual property now being used by Defendant to develop the GWI and alleging trade secret misappropriation and breach of contract. (Doc. No. 1). In addition to the declaratory judgment, Plaintiff seeks damages, a permanent injunction to cease the alleged misappropriation, and attorney's fees. (Id.).

On February 14, 2022, Defendant filed an answer and counterclaim. (Doc. No. 9). Defendant broadly denies Plaintiff's allegations, arguing that he is generally relying on public knowledge to develop the GWI and that Plaintiff cannot identify any specific trade secrets or intellectual property he has misappropriated. (Id. at 2–3). In addition, Defendant argues that he is protected by his copyrights in his publications. (Id.). Defendant also argues that Plaintiff's claims

for equitable relief are barred by unclean hands, Plaintiff's own causation of the alleged harm, and other equitable doctrines. (Id. at 4).

Defendant also raises counterclaims. (Doc. No. 9 at 10–16). Defendant alleges that, as manager of Plaintiff Barrett Values Center, LLC, Gomez "came to view Defendant's work … as a distraction from [Plaintiff's] focus on organizational transformation of its corporate clients." (Id. at 12). Defendant alleges that "Plaintiff consented to and endorsed" his departure and his work to continue his mission "to support the evolution of human consciousness." (Id. at 13). Defendant alleges that, since his departure, he has had multiple disputes with Gomez and that Nancy Barrett has sided with Gomez in these disputes. (Id.). Defendant alleges that Plaintiff "has unreasonably refused" to distribute profits, at Gomez's direction. (Id. at 13–14). Defendant also reports that he has been unable to reach agreement with Nancy Barrett and Gomez over Gomez's compensation nor over Defendant's independent work. (Id. at 14). As a result, Defendant argues that "Plaintiff's members have reached an unreconcilable deadlock." (Id.). Defendant alleges that this deadlock is "causing … irreparable injuries." (Id.). Therefore, Defendant asks this Court to dissolve Plaintiff Barrett Values Center, LLC "upon terms and conditions determined by the Court." (Id. at 16). Defendant filed an amendment to his counterclaim on February 28, 2022, alleging additional issues related to a meeting of owners of Plaintiff and terms related to Plaintiff's COO Adolpho Jarrin. (Doc. No. 11).

Plaintiff now moves to dismiss Defendant's counterclaims, arguing primarily that his counterclaim for dissolution should fail legally. (Doc. No. 12). The matter is fully briefed and is ripe for disposition.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil

3

Case 1:21-cv-00304-MOC-WCM   Document 26   Filed 06/22/22   Page 3 of 7

Procedure, the Court must accept as true all of the factual allegations in the Complaint and draw all reasonable inferences in the light most favorable to the plaintiff. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). However, to survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level," with the complaint having "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). A complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Id. at 679 (citations omitted).

### III. DISCUSSION

The parties disagree over whether Defendant's dissolution counterclaim is legally viable. Plaintiff argues that mere disagreement with the majority interest cannot amount to an "irreconcilable deadlock" in voting power under relevant North Carolina corporate law, nor they argue does the parties' disagreement over Gomez's compensation. (Doc. No. 13 at 7–10); see N.C.G.S. § 57D-6-02. Plaintiff also argues that Defendant's claim should fail legally because Plaintiff does not "show what specific rights and interests [Plaintiff] has in the LLC and that some form of relief is reasonably necessary to protect those rights and interest." (Id. at 11, citing Foster v. Foster Farms, 12 N.C. App. 700, 709 (1993); Lowder v. All Star Mills, Inc., 75 N.C. App. 233, 242–43 (1985)). Plaintiff also argues that Defendant seeks dissolution to protect interests outside the LLC but counters that dissolution is only appropriate for interests within the LLC. (Id., citing Foster, 112 N.C. App. at 709). Plaintiff also argues that Defendant's argument that use of LLC

4

assets to pursue the instant litigation should fail legally. (Id. at 12–13). Plaintiff also rejects Defendant's argument that failure to make distributions qualifies. (Id. at 13–14). Plaintiff accuses Defendant of failing to plead facts showing impracticability. (Id. at 16–17).

Defendant argues that he does adequately state a claim for dissolution of Plaintiff. Defendant argues that management deadlock is a valid ground for dissolution. (Doc. No. 15 at 8, citing Battles v. Bywater, LLC, 2014 NCBC 51, 14-CVS-1853, at *22 (N.C. Super. Ct. Oct. 31, 2014)). The North Carolina dissolution standard is similar to the Delaware dissolution standard, and Defendant cites North Carolina Business Court authority holding that management deadlock is a valid basis for seeking dissolution on the strength of Delaware cases reaching the same result, in the absence of North Carolina authority directly addressing the issue. (Id. at 9); Ehrenhaus v. Baker, 216 N.C. App. 59, 85 (2011). Defendant also cites a recent N.C. Supreme Court case affirming judicial dissolution of several LLCs where the parties could not conduct business due to a high level of acrimony. (Id.); Chisum v. Camagna, 855 S.E.2d 173 (N.C. 2021). Defendant argues that the parties have deadlocked under dictionary and Delaware Court of Chancery definitions. (Id. at 10–11). Defendant argues that the deadlock shows "irreconcilable discord," and that this had precluded agreement over Plaintiff's operations and finances. (Id. at 11–15). In addition, Defendant contends that whatever deadlock existed has since become irreconcilable as a result of this litigation and Plaintiff's adoption of a "poison pill" provision. (Id. at 15–18).

The Court agrees with Defendant. There appear to be circumstances where management deadlock is so pervasive and intractable that North Carolina courts—and Delaware courts construing a similar statutory corporate law provision—recognize dissolution as a valid legal remedy.

5

Case 1:21-cv-00304-MOC-WCM   Document 26   Filed 06/22/22   Page 5 of 7

Moreover, the Court finds that this case is replete with issues of material fact in dispute by the parties. In order to properly rule on Defendant's counterclaim for dissolution, the Court must be able to evaluate, among other things: the nature and severity of the alleged management deadlock; the particular interests that Defendant has in Plaintiff and the extent of those interests (which is partly a question of what intellectual property belongs to whom, also at issue here); how assets were used to support the present litigation; the nature of the alleged "poison pill"; the nature and degree of acrimony between the parties; the extent of Plaintiff's ownership over materials used in GWI and other of Defendant's activities in the United Kingdom; the operating practices of the parties over the last twenty years; and the extent of Defendant's involvement in management of Plaintiff up to the present day.

Defendant's dissolution counterclaim does not fail as a matter of law. The Court finds that Defendant has plead adequate facts which <u>could</u> support dissolution, drawing factual inferences in Defendant's favor. If the facts are as Defendant pleads them, then he is being unjustly accused of stealing intellectual property, when he had done no such thing, by a company he played an instrumental role in creating—but from which he has been marginalized and excluded by the partnership of the other two owners, who are mother and son, and who always vote against him in management decisions. By initiating this litigation using the resources of his own company and creating a poison pill, Defendant contends, Plaintiff has made further operation of the company completely impossible. Defendant's account is plausible and, if true, would make dissolution of Plaintiff a potentially appropriate remedy. Of course, the Court does not find that Defendant's account <u>is</u> true, only that it <u>could</u> be true (i.e., it is plausible) and that <u>if</u> it is true, it might justify the remedy of dissolution. Therefore, the Court cannot dismiss Defendant's counterclaim seeking dissolution at this time.

6

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion will be denied.

## ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Dismiss Defendant's Counterclaim, (Doc. No. 12), is **DENIED**.

Signed: June 21, 2022

Max O. Cogburn Jr.
United States District Judge